Good morning, Your Honors. My name is Ronald Herisko. I'm the appellant in this case. And I think that there's a clarification here, and what I think is the crux of the problem with the reporting by Bank of America and Experian is that they have failed to distinguish various types of accounts. For example, there is an account, let's say a credit card account that's discharged in bankruptcy, and there's a zero balance and no payments are going to be made. But that's not the only account, but that's the way Bank of America and Experian are treating all of the accounts. The other accounts are, there's a credit card account, there's a balance, and it's discharged in bankruptcy, but the creditor, I'm sorry, the debtor decides to pay the account off. And then there's the account, such as in this case, where there's a debt based on the second mortgage, there's a personal liability, and there's in-rem liability. And the discharge of the personal liability is reported, but there's no, there appears to be no procedure that has been developed by Bank of America or Experian for dealing with the liability that remains for the property. Well, there's no liability. They've got a lien, right? I'm sorry, Your Honor? They have a lien, but there's no... No, they have a lien, but... Just the extent... A debt remains... To the extent of the value, to the extent of the equity you have in the property over the first mortgage. I'm sorry, I didn't follow. Well, they have a lien on your property you don't owe according to the terms of the debt. And the personal liability is discharged. They have a property interest in your property, which is, they can realize to the extent of your equity over and above the value of the first mortgage, right? That's correct. And there's no payment schedule on that, that they've set? No, that's right. There is none. In this case, there was no reaffirmation, but that was the status of the debtor and his discharge with respect to that account. Yeah, no, I think I understand the legal status. The thing that gave me pause about this case, and I appreciate your argument, which is they needed to be more complete in the status. The thing that gave me some pause was your letter, which didn't ask them to do that, but, say, your letter said this debt wasn't discharged, basically. That's correct, Your Honor. And it was discharged. It was, and I would have to admit, I have abandoned that particular defense at this point in time. However, there's a further distinction. In the situation where you have the in-rim lien, that the personal liability is discharged, but the in-rim portion out of that account remains intact. For example, there's still a balance due on that particular account, even if it's a lien against the real property. So there's, like, two debtors in this case to some extent, and so it's not a zero balance with respect to the property, and it's not a zero payments if the payments are continued to be made. I'm not sure I understood your answer to Judge Thomas' question. If I understand the story right, and please tell me if I've got these things screwed up, you found out about the report. You sent Experian a letter saying that the debt was improperly recorded because the debt was exempt. Well, that's correct, yes, but I thought in the bankruptcy proceeding it had been exempted, but I didn't do a reaffirmation. Okay. And you, I wasn't sure what you told Judge Thomas. Are you saying now you agree that your letter was not sufficient to cause them to correct it? No, because also in that letter you will see that I refer to the fact that they're reporting zero balance when the balance was $20,000, and I said, et cetera, meaning zero balance and zero payments. I had never missed a payment from the date of the balance. That may be, but if you say this shouldn't be on here because it's exempt, they go look at it and find out that it's not exempt, what are they supposed to do? No, the issue here is that they failed to report the balances. There's still a balance due on the account, and there's still a payments being made, so each month they should have been reducing the balance and showing the payments. Except that there really is no balance due after discharge. I mean, I take your point that if you want to keep your property, you have to make some arrangement with the creditor on the second mortgage, and I take the creditor's interest as only to the extent of their interest in the property, not personally. And you elected to make the entire payment rather than to go and renegotiate some post-bankruptcy deal, which may or may not have been flawed because of the reaffirmation requirements of the code. I get that. But it's hard to see, on the other hand, I mean, I understand you're great, but on the other hand, it's hard to see what they did wrong by reporting accurately what happened in the bankruptcy. Well, that's the point. When you didn't quite complain about it. If your letter had said, look, here's what happened. I'm on a ride-through provision, which has been recognized. I'm making payments. I wish you would contact this creditor and affirm that this is the arrangement. Well, you know, they might have had a different response. Well, I had communication with both an experienced by telephone and with the letter twice in bankruptcy. In the Bank of America case, and I spoke with the gentleman who responded to the letter. If I may, Your Honor, read. Just before you change the thought, I just want a couple of factual things. This property, is this a home that we're talking about? Yes, it's a residence. So it's a residence. And in 207, you quit making payments. Is that right? When they stopped sending me invoices in 207, I stopped making payments. So where's the property now? I'm sorry? Who has the property now? I still have the property. But you haven't had to pay for it for three years. Well, let me interject something here. If I may for a minute read two sentences from the congressional record. This is under 16 CFR 607, Compliance Procedure. Reporting of credit obligations in F2 says this. Significant verified information. A consumer reporting agency must report significant verified information it possesses about an item. The item being an account. For instance, a consumer reporting agency may continue to report a paid account that was previously delinquent, but should also report that that account has been paid. Similarly, this is the issue. A consumer reporting agency may include delinquencies of debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt, for example, discharged, comma, voluntarily repaid. Since December of 07, somewhere between then and now, there's two parts to the credit report. There's the part that they talk about they call potentially negative items where this account still appears, and it still shows zero balance and zero payments. There's a second part of the report on a later page, like page 9 from when that was page 2, and they have a section called History of Account Balances. Now, in December of 07, they stopped reporting a balance and changed it to zero. Let me ask you, I wasn't sure what your answer to Judge Beisling was. He asked you something, and then you started quoting from the congressional record. I want to get back to you have the property. Yes, well. And are you making payments on it now? That's the point I was about to make. You're making payments on the first mortgage, correct? Sorry? You're making payments on the first mortgage. Well, yes, I made the payments. I bought it. No, no, no. Do you owe anything on the first mortgage? Yes. Okay. And what's the end of the term of the first mortgage from here? How many years did you have left? Oh, it's 10 or 15. All right. And you're making payments on those. And you're not making payments on the second mortgage at the present time because they stopped sending invoices. Is that what you're saying? No, I have, Your Honor. In fact, that's it. I stopped making payments when they stopped sending invoices because the balance, the amount of the second mortgage changed every month. They had it computed on the first mortgage. Give me the dates. I'm getting confused. When did you stop making the payments? When they stopped sending invoices. Yeah, when was that? October of 2007. Right. Well, they had to stop sending invoices because it would have been improper under the bankruptcy code to keep sending you invoices post this mortgage. First mortgage never stopped. No, but they've got, you know, that's a. . . When did you start making payments again, if at all? I didn't make any payments, and I was getting to that point. Now, as a result of the zero balances in 2007, when they start reporting no balance, no payments, in September of 2009, I paid it off. I negotiated a settlement with them, and they gave me a slight discount, and I paid $15,000 now. Okay, so now that second mortgage has been discharged. That's right, and they don't know how to report it because they were reporting zero. But now I paid it off, so they're supposed to, according to what I read in the congressional federal registries, they should be reporting these balances even though because the account is still liable as to the real estate. If it was really discharged altogether, and I never paid it off, and they would, of course, foreclose on the property. But if the time period lapsed, they would delete that from the account, and it would still be a balance. Well, did the second mortgage holder release the mortgage then after you paid it off? Yes, they did. Yeah, so you've got just one mortgage on the property. That's correct. Now, let me ask you, what's your real gripe today? Do you want damages, or do you want your credit reporting changed? What I'm looking for is for them to change their procedure so they recognize that they can't report a zero balance when there's a balance due and payments are being made. Okay. In other words, to be accurate, they have to report what's going on with the account. That's what that congressional record says with respect to reporting. If it's repaid, they've got to report that.  I think we have your argument in hand. We'll give you a little over time now, but we'll give you a short time for rebuttal. Thank you, Your Honor. Please, the Court, my name is Victoria Dorfman, and I represent defendants of police in this case. Did you write the briefs for the defendants? For the defendants, not the plaintiffs. I'm sorry. You did the briefing on that? Yes. Okay. What plaintiff is seeking is to change the procedures. However, the procedures are accurate. There is no payments. They're not really. I'm sorry. I understand, but they're not really accurate in terms of telling the whole story. He wanted his people wanted to give him credit. He wanted them to know that he was still making payments on this debt, and now he wants them to know he's paid it off. What's wrong with that? Well, there is no independent. I'm sorry? There is no independent freestanding completeness requirement under Gorman, so the test is whether the information is patently inaccurate or misleading in such a way as to affect creditors' decisions. And in this case, it's not misleading. What credit report does is to report payments which are mandatory and to allow creditors to assess the outstanding obligations people have. Credit reports do not include voluntary payments such as rent or charitable contributions. Right, but he says, please change my credit report because it's negatively affecting my ability to borrow, and if you just reflect this on the credit report accurately, I'm happy. What's wrong with that request? Well, it's – I mean, if your answer is we're not required by regulations, that's not answering my question. Well, no, no, I'm not saying – because you have dispute resolution mechanisms, right? And if you say it's inaccurate or you think this account's being – the creditor is improperly asserting this debt, you can assert it. And your obligation, your goal is to be accurate. What's wrong with adding this accurate bit of information to the credit report? Well, two problems, Your Honor. First of all, as points have admitted – seem to admit, the complaint in his letter in the notice he provided, which is the cornerstone of an investigation, is that his debt was exempted. But in reality, you know – I understand that argument. So – I'm not asking you a legal theory. Why don't you just correct it today? I mean, there's nothing – that's all – I asked him, do you want damages? No, he just wants his credit report corrected. Why can't you do that with the additional accurate information? I'm not – I don't think he's asking you to say anything inaccurate, false, or misleading. He just wants some accurate information added. What's wrong with that request? Well, the way plaintiff is asking the information to be corrected is, as he just said, that the payments are due and that he was making them. The payments are not due. It would be misleading. In fact, experience has been sued in a white litigation, which we are referencing in our brief, for reporting payments on discharged debts. No, I understand that. But what – as I – and he may have put his request in retrospect inartfully in the sense that he – you could justifiably say, no, no, that you don't – your payments aren't due on that. But if he wants to report voluntary payments, that he's making voluntary payments on the debt, that now that the debt's been extinguished voluntarily, I don't understand why you're resisting to add that information. Well, we're – I think we're talking about two different things. Perhaps. One is whether the payments he was making voluntarily before the debt was fully repaid. And, again, credit reports only reflect mandatory payments because this is what credit report does. It's about obligations people incur, and they need to meet on their monthly or yearly basis, and that's how creditors decide whether they can extend for their credit. Right. But he's saying in this case creditors won't extend him credit because he had this discharged in bankruptcy and didn't reaffirm it, and he's making voluntary payments. His creditor is happy with him, and he wants that reflected. And if the creditor doesn't object and he doesn't object, what's wrong with including accurate information? Because credit – I'm sorry, I'm repeating myself. Because credit reports only reflect required payments. And plaintiff admits here there was no reaffirmation, therefore, they're not required. He was free to stop at any point. Let me ask you this. Suppose – let me ask Judge Thomas's question a different way. Suppose Mr. Hrisko's letter said what he's saying now, not what he said back then, what he's saying now. In other words, suppose he said, I want my report to reflect that this was discharged, but I'm on a ride-through. Would there be a reason why the report wouldn't reflect that? I don't think so, Your Honor, because – Don't think what? You wouldn't do it, or you – No, because the trade lines report required payments, not voluntary applications, which can be – not voluntary payments, which can be stopped at any time. And, in fact, as I was mentioning, in that White case, parties entered into an agreement sanctioned by the judge whereby you cannot report voluntary payments after the debt was discharged because that is misleading. That makes creditors think you have more obligations than you, in fact, do. But the ride-through puts everybody on notice that they're not – that they are exactly what they are. Or you can stop it whenever or whatever he wants to. Well, again, this is one point. He didn't complain about that in his notice. He complained about that being discharged. And second, this is not how credit reports function. They just don't report voluntary payments. Well, I understand your – let's see if we can move on from the voluntary payments. The difference in this case from a pure voluntary payment case is that the second mortgage holder had a lien on the property. And, therefore, could exercise its right to foreclose because it passed through bankruptcy, at least to the extent of the value of the property, and certainly the whole debt if the equity in the property were sufficient. So that's a – you know, that's an issue for creditors. If you want to lend him more money, does he – what are they going to do with the second mortgage? And he wants them to know, look, I'm paying that second mortgage. There is an obligation. That's not purely voluntary payment. I'm trying to make sure that the – there's no risk of foreclosure. So it's incomplete information. And it could, as you say, cut one way for a creditor. In other words, saying, look, you don't have an obligation, and, therefore, it helps the debtor because that's not considered in the monthly obligation. But it could cut the other way, saying, A, he doesn't pay his debts, and, B, there's this unsatisfied mortgage risk out there, and we don't know what's going on. Well, he doesn't – by choosing not to reaffirm, he decided to take the chance that the property would be foreclosed. And if he reaffirmed, then obviously the payments would be – Right, but as you know, the bankruptcy code, once the case is over, you can't go in and do a non-protonc reaffirmation, even if – I mean, it happens a lot where people want to reaffirm. They're in this situation. They don't get it. They think, well, I'm just going to keep making the payments. And then they get surprised because later on they say, well, no, you had to do that while you were in bankruptcy. Now, he's a lawyer. That's different. But a lot of people – it happens a lot with bankruptcy. That's how the bankruptcy code is structured. That does not apply for – Right, but that's why they developed this odd right-through procedure that – you know, I doubt – I've always doubted the legality of that. But our case law has sanctioned it where you can do that. Well, you can – you no longer can under Dumont and BCP amendments, so this problem does not even arise anymore. Judge Weislein, do you have a question? Well, I had – you just addressed the last thing. This whole right-through concept is history. Yes. And it's not something – I know that. Yeah, it's – Yeah, 2004 BCP amendments. So this is not going to be an issue in the future because – No, no, no. We're talking about a window in time where this problem occurred. That's correct. And as I said, in the other case against Experian, there was an agreement that whenever there is discharge debt, no voluntary payments would be required. What do you think of the reply brief that said that the penalties persistently throughout the brief employ the fallacy of language to deceive, mislead, and falsely propound their specious arguments, et cetera, et cetera? That's directed at you personally. Well, I guess. I mean, I'm from Alaska. We don't do those kind of things unless – and were you intentionally trying to lie? Absolutely not. I believe our position is correct based on the BASO – on the PSO. I'll ask counsel that too because I just don't usually see this kind of language between counsel. And I didn't see any efforts to deceive, but maybe counsel can point that out. So thank you. I believe you were forthcoming and truthful. Okay. I guess just advocacy on behalf of counsel. Okay, thanks. Does everyone have anything? No, thank you very much. All right. I think we have your hand. Do you have anything else you want to tell us this morning? No, just – well, I guess one more thing to point out that indeed there was a change in strategy by pointing between the notes he gave and what you're hearing involved today and not mitigating hindsight. Yes. Are you still having – is this the – I mean, have you reported on the credit? Do you know about his payoff of this one? No, it's not on the record. I see. Okay. Thank you. All right. Counsel, I'll give you a couple minutes. Thank you, Your Honor. She mentioned about the voluntary payments. This whole thing would not be – there would be no inaccuracy if they clearly reported the payments and the balances, even if they were voluntary. Because at some point, she said, well, what if they stop paying? Or maybe the court has asked, what if they stop paying? It's voluntary. At that point in time, then they could show no payments. Right. I think her point – you're in a different situation, but I think for most people who are borrowers, if they're making voluntary payments, it helps them not to have that on the credit report because it expands the monthly obligations to which someone might consider. So, I mean, you're in a slightly different situation than most other people. Well, with this case, Your Honor, I was seeking accuracy. And that's what the statute calls for, is maximum possible accuracy. This portion I read out of the congressional record clearly says discharge, comma, a voluntarily repayment. Okay. Then do I understand correctly it really doesn't hurt your credit? This is just a point of accuracy for you. Well, as a lawyer, I'm looking for them to be complying with the law. Of course, on the personal side, whatever effect it has on me and damages my ability to get credit, which it did. Why would it damage your credit? I mean, your bankruptcy is a matter of record. What does this do to your credit? The fact that your bank – This was the largest account. Okay. But now it shows you don't owe them any money. How does that hurt your credit? Well, because it indicates that I didn't pay them. The way they responded – Did someone deny you credit because of this? Certainly that would affect my credit. Did someone deny you credit? Yes, I've had – Because of the report or because you were bankrupt? Well, I don't know. They said they relied on stuff from experience. Okay. Let me ask you one other question. Even if we assume that this thing was not technically accurate, I'm not sure why we shouldn't affirm the judge on the alternative ground that your original complaint wasn't accurate. You didn't put them on notice of what the problem was, and I'm not sure why we shouldn't affirm on that basis. What's your answer to that? I don't understand what was inaccurate about that. You said the problem is that it was exempt, and obviously it's not exempt. Well, that's correct. That was only part of my complaint. And like I said, with the letter that I sent notifying that, and I talked to them on the telephone about it, it says in my letter that it was included in a bankruptcy discharge, zero balance among others. Well, the zero – what I'm focusing on, the portion that's really quite important is the zero balances. I was making payments, and they were reporting a zero balance. Why didn't you reaffirm this debt in bankruptcy? Frankly, Your Honor, I didn't know. I'm not a bankruptcy lawyer. I did it myself, and I put in exempt, which used to be under the bankruptcy rules years ago, and now it's reaffirmation. Right. I mean, if you'd reaffirmed the debt in bankruptcy, we wouldn't be here today because the obligation would have carried through. I mean, I understand for a time we had this write-through procedure, but under the code I always thought it was dubious anyway that you could – and it was for the protection of debtors. Well, you know, there are millions probably of people in the same boat with this situation where they're incorrectly reporting the payments and the balances of people who voluntarily or through reaffirmation – I don't know what they do in this case – of the balance of the account. And the account is – Yeah, except though – except that your situation is a little bit different than you did secondly. But for those people, they're given a fresh start in bankruptcy. So creditors want to extend credit, take the fact of the bankruptcy. They also take the fact that there's no money due on the accounts. So to say you're going to require voluntary payments to be disclosed for everybody, I think there's some force to experience argument that, you know, that really hurts a lot of debtors. Well, I think – In fact, it hurts most debtors. One of the ways to look at it is if they're reviewing your account and they see that it's zero after the bankruptcy, then they conclude that you abandoned the debt and you did have a discharge. What they could easily do in these cases where there's in rem lien, they could state in rem lien. What's so hard about that? Well, they have personal liability. They could correct their reporting procedures so that it is accurate as it is. It's inaccurate and creates more problems. Like when I paid it off, you know, a year and a half later, they don't have a way to report that. Well, they – you have paid it off. It doesn't show up as a lien on your property, I assume, on the credit report anymore, right? No, it still shows – it's shown on my credit report. Zero balance, zero payments. That's what I'm saying. Since I paid it, because they were carrying it incorrectly with the balances and payments since 1907, now they're in a box. What they've done is they deleted the portion where they have payments. It's history of payments. They deleted that from the report altogether. That's also inaccurate reporting. And now they have zero balance and zero payments, which shows that I didn't pay it. All right. Judge Weiss, last question. Well, I guess I'm just concerned. I think this is a little overzealous in the reply brief when you attack them personally. I was looking for something substantive when I got to your reply brief, and I just saw you attack counsel, accused them of basically being liars and misleading and false – and actually suppressing facts. And I just – I usually don't see that when I'm looking for legal arguments, such a direct attack on counsel. It seems unprofessional to me. Well, you know, I'll tell you how this struck me. First of all, I was years ago a student of formal logic. And as I read this brief, everything started popping out at me. As I've laid out in my reply brief. They're avoiding the issue here. On page 17, this is the classic case of begging the question. They start off, accurate reporting is complete, defense to all claims. That's the first premise. Then they conclude with, our information is accurate. Well, that's begging the question. They're answering the same question that they're asking. Right. But I think the point Judge Weislein was making is you could have made that point simply and directly as a matter of a logical statement as opposed to calling them a liar. So – and it's a practice pointer, but, you know, on a pallet briefing, it usually doesn't go over so well when you read it. I'm going to use this – I'll probably use this as an example of what not to do when I talk to new members of the bar. Because it just struck me. I was recently talking to new members of the bar and telling them, you know, you've got to treat one another with respect. Because it gets so easy to get – especially when you're acting as your own counsel to personalize things that aren't intended to be personal. And then pretty soon all you're doing is fighting about personalities and having completely lost sight of the legal issues. Well, I actually did not really – and I had no intention of directing this to counsel. What I was directing it to was the content of this brief. And because I saw so many fallacies of logic being employed, I'm thinking, this guy's a New York lawyer, probably smart, and Harvard is something of that nature. Turned out it was a lady. And he could be using it intentionally, willingly or unwittingly. But the fact is there were a lot of – there were a lot of fallacies of logic used in this – in this – in their brief to the point that I felt I needed to address that. Because the facts are really simple. We understand the facts. And your argument has taken you – we've given you about five – almost six extra minutes. So unless Judge Silver and Judge Meisner have any further questions, I think we're done with the oral argument calendar for this morning. I want to thank all of you for attendance. And the case will just – will be taken under advisement. Thank you. All rise for the corporate session to adjourn.
judges: Beistline, Thomas, Silverman